IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01683-PAB-MJW

GREGORY TOY,

        Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

        Defendant.

---

## ORDER

---

        This matter is before the Court on Plaintiff's Motion for Partial Summary

Judgment [Docket No. 86] filed by plaintiff Gregory Toy and Defendant's Motion for

Summary Judgment [Docket No. 109] filed by defendant American Family Mutual

Insurance Company.  The Court has subject matter jurisdiction pursuant to 18 U.S.C.

§ 1332.

## I.  BACKGROUND[1]

        This action arises out of an insurance coverage dispute between defendant and

plaintiff Gregory Toy.  At all times relevant, Mr. Toy was insured by defendant under

policy number 05XF9988-01.  Docket No. 86 at 3, ¶ 1.  The policy's Underinsured

Motorist ("UIM") endorsement limited coverage to $1,000,000 for any single accident.

*Id.*; *see* Docket No. 109-1 at 3.  The UIM endorsement was subject to multiple

exclusions, including "[t]he direct or indirect benefit of any insurer or self-insurer under

---

[1]The following facts are undisputed unless otherwise indicated.

any workers' compensation, disability benefits or similar law." *Id.* at 2.  The

endorsement also stated:

> No one will be entitled to receive duplicate payments for the same elements
> of "loss" under this Coverage Form and any Liability Coverage Form or
> Medical Payments Coverage Endorsement attached to this Coverage Part.
>
> We will not pay for any element of "loss" if a person is entitled to receive
> payment for the same element of "loss" under any workers' compensation,
> disability benefits or similar law.

*Id.* at 3.  The UIM endorsement's arbitration clause stated, in relevant part:

> If we and an "insured" disagree whether the "insured" is legally entitled to
> recover damages from the owner or driver of an "uninsured motor vehicle"
> or do not agree as to the amount of damages that are recoverable by that
> "insured," then the matter may be arbitrated.  However, disputes concerning
> coverage under this endorsement may not be arbitrated.  Both parties must
> agree to arbitration.

*Id.* at 4.

On August 26, 2008, Mr. Toy was injured in a motor vehicle collision caused by

Ceaser Barriga-Nino.  Docket No. 143 at 6, ¶ 1.  Mr. Barriga-Nino's insurance policy

limit was $25,000.  Docket No. 86 at 3, ¶ 3.  Mr. Barriga-Nino offered to settle with Mr.

Toy for $25,000 and, on November 2, 2009, defendant provided Mr. Toy written

consent to accept the $25,000 settlement.  Docket No.  Docket No. 143 at 6, ¶¶ 2-3.

On December 29, 2009, Mr. Toy settled his workers' compensation claims with his

workers' compensation carrier for $80,000.  Docket No. 109-6.

On December 16, 2010, Mr. Toy submitted his claim to defendant for evaluation

under the UIM endorsement.  Docket No. 143 at 6, ¶ 4.  On May 26, 2011, defendant

offered to settle Mr. Toy's claim for $75,000.  Docket No. 109-2 at 2.  In a letter to Mr.

Toy, Vicki Mrowiec, defendant's Commercial F/R Claim Desk Senior Adjuster,

explained that defendant's settlement offer took into account, among other things, the

$43,443.87 for medical expenses and additional compensation for lost wages paid by

Mr. Toy's workers compensation carrier.  Docket No. 109-2 at 1-2.  Defendant's Fed. R.

Civ. P. 30(b)(6) deponent stated that its adjusters offset the amount of workers'

compensation benefits received by an insured pursuant to an UIM endorsement's

exclusions.  Docket No. 113-1 at 3-4, pp. 17:20-18:6 (Defendant's Rule 30(b)(6) Dep.).

In response to defendant's settlement offer of $75,000, Mr. Toy asked defendant for a

written evaluation of his claim.  Docket No. 109-3 at 2.  On June 2, 2011, defendant

made Mr. Toy a final settlement offer of $100,000.  Docket No. 109-4 at 1.

On July 1, 2011, plaintiff's counsel sent defendant's counsel a letter asking if

defendant would "agree to arbitrate the value of Mr. Toy's underlying underinsured

motorist claim?"  Docket No. 101-1.  Mr. Toy claims that defendant did not immediately

respond to his July 1, 2011 letter.  Docket No. 113 at 5, ¶ 1.  On August 4, 2011, Mr.

Toy filed an action against defendant in the District Court for the City and County of

Denver, Colorado bringing claims for breach of contract, bad faith breach of contract,

and a statutory claim under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Docket No.

113-5 at 3-5.  On August 10, 2011, defendant advised Mr. Toy that it would not formally

respond to a request for arbitration until such time as Mr. Toy provided a formal

demand for arbitration.  Docket No. 86-4 at 1.  On August 15, 2011, Mr. Toy served a

Demand for Arbitration on defendant.  Docket No. 86-3.  Mr. Toy dismissed his state

court action against defendant without prejudice, which defendant acknowledged.

Docket No. 113 at 5, ¶ 1; Docket No. 113-6 at 2.

On August 29, 2011, the parties entered into an Arbitration Agreement, which

provided that "[t]he sole issue to be determined through this arbitration is the nature and extent of Claimant's damages arising from the aforementioned August 26, 2008 collision." Docket No. 98-1 at 2. The agreement also provided that "the arbitrator does not have authority to resolve any disputes concerning coverage under the underinsured motorist policy provisions." *Id.* at 3. On April 9 and 10, 2012, an arbitration hearing was held before arbiter William G. Meyer. Docket No. 86 at 4, ¶ 9. On April 12, 2012, the arbiter determined the damages to be $2,067,005.30, which consisted of $275,000 in noneconomic damages, $964,557 in economic damages, and $300,000 in physical impairment damages, plus interest and costs. Docket No. 86 at 4, ¶ 10; Docket No. 86-5. The parties agreed to reduce the award to $1,000,000, the UIM policy limit, and, on April 19, 2012, defendant paid Mr. Toy $1,000,000 plus costs and interest. Docket No. 113-8 at 2. Defendant did not appeal or request any setoff from the arbitration award. Docket No. 86 at 4, ¶ 12.

On June 1, 2012, Mr. Toy filed the instant case in the District Court for the City and County of Denver, Colorado, claiming that defendant unreasonably delayed or denied payment of insurance benefits pursuant to Colo. Rev. Stat. § 10-3-1115 and § 10-3-1116. Docket No. 1-3 at 4. On June 27, 2012, defendant removed the case to this Court. Docket No. 1. Mr. Toy later amended his complaint to add a claim against defendant for bad faith breach of insurance contract. Docket No. 42 at 7; *see* Docket No. 15.

Mr. Toy moves for partial summary judgment asking the Court to find as a matter of law that the arbiter's calculation of his actual damages has preclusive effect in this proceeding and that the "covered benefit" for purposes of § 10-3-1116 is equal to the

4

$1,000,000 UIM policy limit.  Docket No. 86 at 2.  Defendant moves for summary judgment arguing that Mr. Toy's bad faith and statutory claims are barred by the doctrine of claim preclusion, that defendant acted reasonably by offsetting its settlement offers by the amount Mr. Toy's received from his workers' compensation carrier, and that § 10-3-1116(1) does not permit Mr. Toy to recover attorneys' fees accrued in pursuing this action.  Docket No. 109 at 2.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Issue Preclusion

Mr. Toy argues that the arbiter's calculation of his actual damages from the August 26, 2008 collision in the amount of $2,067,005.30 should be given preclusive

effect in this action.  Docket No. 86 at 4.  Issue preclusion, or collateral estoppel is an

"equitable doctrine that operates to bar relitigation of an issue that has been finally

decided by a court in a prior action."  *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47

(Colo. 2001); *see Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo.

1999).[2]  "Its purpose is to promote judicial economy, to conserve private resources, and

to protect parties from unnecessary or vexatious litigation."  *Byrd v. People*, 58 P.3d 50,

53 (Colo. 2002).  Under Colorado law, issue preclusion applies when the moving party

can show that: (1) the issue presented in the current case is identical to an issue

actually litigated and necessarily adjudicated in the prior proceedings; (2) the prior

action reached a final adjudication on the merits; (3) the party against whom the

doctrine is raised was a party, or in privity with a party, to the prior adjudication, and (4)

the party against whom the doctrine is raised had a full and fair opportunity to litigate

the issue in the prior action.  *Bebo Constr. Co.*, 990 P.2d at 84-85; *see Dodge v. Cotter

Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (identifying the elements for federal

common law collateral estoppel).[3]  The offensive use of issue preclusion occurs where,

as here, "'a plaintiff seeks to foreclose a defendant from relitigating an issue the

defendant has previously litigated unsuccessfully in another action against the same

---

[2]Although the Colorado Supreme Court has expressed a preference for the term "issue preclusion," the parties in this case use the terms "issue preclusion" and "collateral estoppel" interchangeably.  *See Argus Real Estate, Inc. v. E-470 Public Highway Authority*, 109 P.3d 604, 608 (Colo. 2005)

[3]Neither side addresses the choice of law issue and the record does not indicate whether the insurance policy contained a choice of law provision.  However, both parties cite to Colorado law and appear to be under the assumption that Colorado law applies.  Finding no compelling reason to apply the law of another jurisdiction, the Court will apply Colorado law.

. . . party.'" *Harrell v. U.S. Postal Service*, 445 F.3d 913, 921 (7th Cir. 2006) (quoting *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984)).  Trial courts have broad discretion to determine when nonmutual offensive issue preclusion applies.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).

As a threshold matter, Mr. Toy does not clearly indicate how the arbiter's calculation of his actual damages is relevant to damages in the instant case.  There is no dispute that defendant paid Mr. Toy the policy limit of $1,000,000 shortly after the arbitration concluded and Mr. Toy does not seek additional actual damages.  *See* Docket No. 113-8 at 2; Docket No. 42 at 7-9.  Mr. Toy provides no other indication of how the damages amount determined by the arbiter is relevant to determining bad faith and statutory damages.  Thus, Mr. Toy seeks summary judgment on an issue (the amount of damages being $2,067,005.30) that he does not demonstrate the relevance of.  In this situation, the Court will deny partial summary judgment on this issue.  *See Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975) ("A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation."); 10B Charles Alan Wright et al., Federal Practice & Procedure § 2737 (3d ed. 2013) ("if the court determines that entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudication, it may decline to do so").

Mr. Toy suggests the award of $2,067,005.30 is relevant for other purposes, namely, that the "jury should evaluate American Family's conduct in light of, among

other things, the amount of Mr. Toy's damages as determined by a neutral arbitrator."

Docket No. 86 at 5.  Mr. Toy further argues that, in determining the reasonableness of

defendant's conduct, defendant's settlement offers should be viewed in light of the

actual value of his damages.  Docket No. 102 at 5.  In Colorado, the Unfair Claims

Practices Act may be used as "valid, but not conclusive, evidence of industry

standards."  *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (citing

Colo. Rev. Stat. § 10-3-1104(1)(h)).  "Compelling insureds to institute litigation to

recover amounts due under an insurance policy by offering substantially less than the

amounts ultimately recovered in actions brought by such insureds" is considered an

unfair claim settlement practice.  Colo. Rev. Stat. § 10-3-1104(1)(h)(VII).

However, to the extent Mr. Toy argues that the arbiter's calculation of damages

is relevant to the reasonableness of defendant's conduct, Mr. Toy fails to meet the

identity of issue requirement.  In order to have preclusive effect, the issue precluded

must be "identical to an issue actually litigated and necessarily adjudicated in the prior

proceeding."  *Bebo Constr.*, 990 P.2d at 85.  An issue is actually litigated when it was

raised by the parties in the prior action and necessarily adjudicated when "a

determination on that issue was necessary to a judgment."  *Id.* at 85-86.  Mr. Toy fails

to show that defendant's conduct was placed at issue in the arbitration proceeding.

Moreover, in this case the jury will be required to evaluate defendant's offers and other

conduct in light of what defendant knew at the time.  "It is the insured's burden to

establish the insurer's knowledge or reckless disregard of the fact that a valid claim has

been submitted."  *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572-73 (Colo.

App. 2003) ("the issue before us is whether defendants had a reasonable belief that

they were not obligated to pay UIM benefits" during the time that litigation against the tortfeasor was pending); *see also Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) ("would a reasonable insurer under the circumstances have denied or delayed payment of the claim under facts and circumstances" (internal quotation marks omitted)).  Thus, an arbiter's calculation of damages, based on facts available in April 2012, does not necessarily reflect the unreasonableness of defendant's conduct, based on the facts available to defendant in May and June 2011.  *See B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) (recognizing "the principle that matters adjudged as to one time period are not necessarily an estoppel to other time periods" (internal quotation marks omitted)).  Plaintiff has not submitted any evidence to explain the information in defendant's possession at the time defendant made its settlement offers.  Moreover, there is no indication that defendant's knowledge of the facts and circumstances concerning Mr. Toy's actual damages was ever determined during the arbitration.  *See Bebo Constr. Co.*, 990 P.2d at 85.  Thus, it is not clear how a determination by the arbiter as of April 12, 2012 is relevant to the facts and circumstances defendant knew or should have known at prior points during its handling of Mr. Toy's claim and, as such, Mr. Toy has failed to meet the identity of issue element.  The Court will deny plaintiff's motion for partial summary judgment on this issue.

### B.  "Covered Benefit"

Mr. Toy moves for summary judgment on the amount of his "covered benefit" as it relates to Colo. Rev. Stat. § 10-3-1116(1).  Docket No. 86 at 7.  Mr. Toy argues that,

because the UIM policy limit was $1,000,000 and because defendant paid Mr. Toy

$1,000,000, the covered benefit is $1,000,000 for the purposes of calculating damages

under § 10-3-1116(1).  *Id.*  Defendant argues that it is liable only for those benefits

unreasonably delayed or denied up to July 1, 2011, the date when Mr. Toy first

mentioned the possibility of arbitration.  Docket No. 98 at 10.

Colo. Rev. Stat. § 10-3-1116(1) provides that:

> A first-party claimant as defined in section 10-3-1115 whose claim for
> payment of benefits has been unreasonably delayed or denied may bring an
> action in a district court to recover reasonable attorney fees and court costs
> and two times the covered benefit.

In construing a statute, Colorado courts "aim to ascertain and give effect to the intent of

the General Assembly."  *Dubois v. People*, 211 P.3d 41, 43 (Colo. 2009).  "If the

language in the statute is clear and the intent of the General Assembly may be

discerned with reasonable certainty, it is not necessary to resort to other rules of

statutory interpretation."  *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo. 1990).  "If,

however, the language of the statute is ambiguous, or in conflict with other provisions,

[courts] then look to legislative history, prior law, the consequences of a given

construction, and the goal of the statutory scheme, to ascertain the correct meaning of

a statute."  *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002).

The Colorado Court of Appeals has recently held that, "[a]lthough 'delay

damages' are awardable under the common law claim, the measure of recovery for the

statutory claim is the 'covered benefit' the payment of which was unreasonably delayed

or denied."  *Hansen v. Am. Fam. Mut. Ins. Co.*, —P.3d—, 2013 WL 6673066, at *9

(Colo. App. Dec. 19, 2013).[4]  As a result, there is no requirement under § 10-3-1115 that the insured "suffer and prove damages attributable to any unreasonable delay or denial in the payment of the "'covered benefit.'"  *Id.*  Moreover, § 10-3-1116 is a penalty statute, *see Kisselman v. Am. Family*, 292 P.3d 964, 972 (Colo. App. 2011) (analyzing the legislative history of §§ 10-3-1115 and 1116), and therefore the fact that calculation of the "covered benefit" may be divorced from actual damages is not inconsistent with the legislative scheme.  The Court therefore rejects defendant's interpretation of the statute.[5]

The next question is whether Mr. Toy is entitled to summary judgment as to the amount of the "covered benefit" at issue.  In the UIM context, calculation of the covered benefit is based on "(1) the damages, if any, suffered by the insured in the covered accident; (2) the amounts, if any, recovered from, or on behalf of, the third-party tortfeasor(s); and (3) the UIM policy limit of liability."  *Hansen*, 2013 WL 6673066, at *9 (construing similar UIM policy).  In making this calculation, the amount of actual

---

[4]Defendant represents that it will file a Petition for Certiorari in *Hansen* and further argues that a decision of the Colorado Court of Appeals is not binding on this Court.  Docket No. 184 at 5.  In diversity cases, the Court is not "bound by decisions of state intermediate appellate courts" when applying state law.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008).  Nonetheless, the Court finds the Colorado Court of Appeals' reasoning in *Hansen* is persuasive and not contrary to any Colorado Supreme Court decision.  *See id.*

[5]In *Hansen*, the jury found that the insurer delayed or denied payment of the covered benefit without a reasonable basis.  2013 WL 6673066, at *8.  The jury was then asked to decide, "What is the amount, if any, of [plaintiff's] underinsured insurance benefit claim for which payment was delayed or denied without a reasonable basis," but returned a verdict of "0."  *Id.*  Nevertheless, the court held that, where the elements necessary to calculating the covered benefit had already been determined, the interrogatory was unnecessary and, despite the jury's finding, upheld an award of two times the covered benefit.  *Id.* at *10.

damages suffered by an insured "must first be determined by a statutory claim action, by agreement[,] by arbitration if the insurance policy so provides[,] by litigation between the insured and the third party tortfeasor[,] or in some other proceeding unique to the circumstances." *Id.* at *9 n.4.

In applying this formula to this case, the Court first turns to the UIM policy. Under the UIM endorsement, Mr. Toy is entitled to the lesser of:

**a.**  The Limit of Insurance for Uninsured Motorists Coverage shown in the Declarations;

**b.**  The difference between the limit of this insurance and all amounts paid to an "insured" by or for anyone legally liable for damages resulting from "bodily injury," including all sums paid under this Coverage Form's Liability Coverage; or

**c.**  The amount of damages sustained but not recovered.

Docket No. 109-1 at 3.  The amount contemplated by paragraph (a) is the UIM policy limit of $1,000,000.  It is undisputed that Mr. Toy settled for $25,000 with Mr. Barriga-Nino's insurance company.  Thus, the amount contemplated by paragraph (b) is $975,000.  With respect to the amount contemplated by paragraph (c), the parties agreed to reduce the amount of the arbitration award to $1,000,000, the policy limit. Thus, the amount of Mr. Toy's actual damages was equal to or exceeded the policy limit. *See Hansen*, 2013 WL 6673066, at *9.[6]  The lesser of the amounts contemplated

---

[6]Defendant incorrectly argues that the parties in *Hansen*, unlike the instant case, agreed on the amount of the covered benefit.  Docket No. 184 at 2.  In *Hansen*, the parties entered mediation only on the insured's breach of contract claim. *Hansen*, 2013 WL 6673066, *1-2 n.1.  The insurer agreed to pay the maximum policy benefit of $75,000 – the policy limit of $100,000 minus $25,000 recovered from the tortfeasor. *Id.*; *accord* Colo. Rev. Stat. § 10-4-409.  Although the insured's damages were not independently calculated, the mediation served to determine that the insured's actual damages were equal to or exceeded the policy limit and "[b]y doing so, the parties

by paragraphs (a), (b), and (c) is $975,000.  Thus, pursuant to the UIM endorsement's

terms, the Court finds that the covered benefit in this case is $975,000.  The Court will

grant plaintiff's motion for partial summary judgment on this issue, but not in the amount

Mr. Toy requests, namely, $1,000,000.

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Claim Preclusion

Defendant argues that Mr. Toy's claims are barred under the doctrine of claim

preclusion.  Docket No. 109 at 5.  Specifically, defendant asserts that Mr. Toy's failure

to raise bad faith and statutory claims during arbitration has preclusive effect over his

claims in this case.  *Id.*  "The doctrine of res judicata, or claim preclusion, will prevent a

party from relitigating a legal claim that was or could have been the subject of a

previously issued final judgment."  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th

Cir. 2005) (internal citations omitted).  As a threshold matter, the parties do not appear

to agree on whether this issue should be decided under Colorado or federal law.[7]  *See*

_____

defined the covered benefit and disposed of the claimant's contract claim."  *Id.* at *9.
Thus, where "the covered benefit had been previously determined . . . the jury should
not [be] instructed to determine the amount of the covered benefit."  *Id.* at *10.

[7]The claim preclusive effect of a federal court judgment in a federal question
case is governed by federal law.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S.
497, 507 (2001).  Conversely, federal common law dictates that the claim preclusive
effect of a federal court judgment in a diversity case is determined by "the law that
would be applied by the state court in the State in which the federal diversity court sits."
*Id.* at 508.  "In the case of a state court judgment, the state [claim preclusion] law where
the judgment was entered . . . applies."  *Hatch v. Boulder Town Council*, 471 F.3d 1142,
1146 (10th Cir. 2006).  None of these situations is entirely analogous where the Court in
this diversity case must determine the claim preclusive effect of an arbitration
proceeding.  The Tenth Circuit in *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1147
(10th Cir. 2007), was confronted with a similar issue where, in a diversity case, the
parties failed to address the choice of law provisions in the arbitration agreement.  The

Docket No. 109 at 6; Docket No. 113 at 6.  Nonetheless, the Court need not decide whether the Colorado or federal claim preclusion law applies because the result is the same under either doctrine.  *See, e.g.*, *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1147 (10th Cir. 2007) (holding that claim was barred under both Virginia and Kansas claim preclusion law).

Under Colorado law, collateral estoppel applies when four elements exist: "(1) the first judgment is final, (2) there is identity of subject matter, (3) there is identity of claims for relief, and (4) there are identical parties or there is privity between parties to the two actions."  *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 668 (Colo. 2011).  The Tenth Circuit test has three elements: "(1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits."  *MACTEC*, 427 F.3d at 831.  Where these three requirements are met, the claim is precluded "unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit."  *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

The Court first turns to the identity of claims/cause of action element, which is present in both doctrines.  Colorado courts and the Tenth Circuit use the "transactional

---

court applied state law in determining that plaintiff's claim was precluded by an earlier arbitration award.  *Id.*  Conversely, in *MACTEC*, the Tenth Circuit applied federal claim preclusion law and determined that an arbitration award precluded plaintiff's subsequently-filed declaratory judgment action.  427 F.3d at 831.  As in *Lewis*, neither party in the instant case has pointed to a choice of law provision in the UIM policy or the Arbitration Agreement, although both the UIM policy and the Arbitration Agreement reference Colorado law.  *See* Docket No. 98-1.

approach" to determine what constitutes a "cause of action" for preclusion purposes.

*See Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 280-81 (Colo. App. 2006);

*MACTEC*, 427 F.3d at 832.  "Under this approach, a cause of action includes all claims

or legal theories of recovery that arise from the same transaction."  *MACTEC*, 427 F.3d

at 832.  "What constitutes the same transaction or series of transactions is 'to be

determined pragmatically, giving weight to such considerations as whether the facts are

related in time, space, origin, or motivation, whether they form a convenient trial unit,

and whether their treatment as a unit conforms to the parties expectations or business

understanding or usage.'" *Yapp*, 186 F.3d at 1227 (quoting Restatement (Second) of

Judgments § 24 (1982)); *accord Salazar*, 148 P.3d at 281 (quoting Restatement

(Second) of Judgments § 24 (1982)).  A new action is permitted "only where it raises

*new and independent* claims, not part of the previous transaction, based on the new

facts."  *Hatch*, 471 F.3d at 1150 (emphasis in original).  A contract is generally

considered to be a transaction such that "all claims of contractual breach not brought in

an original action would be subject to bar of claim preclusion, so long as the breaches

antedated the original action."  *Petromanagement Corp. v. Acme-Thomas Joint

Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988) (holding that contract claims based on

separate transactions were sufficiently similar so as to create a "series of connected

transactions"); *cf. Driver Music Co., Inc. v. Comm. Union Ins. Cos.*, 94 F.3d 1428, 1435-

36 (10th Cir. 1996) (insurer's set-off claim not identical to insured's contract and bad

faith claims for the purposes of claim preclusion); *Azar v. Hayter*, 874 F. Supp. 1314,

1317 (N.D. Fla. 1995) ("Plaintiff's FDCPA claim has nothing to do with whether the

underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt.").

The parties do not appear to dispute that issues of bad faith and statutory damages with respect to defendant's conduct were not *actually* arbitrated. The Arbitration Agreement states that "[t]he sole issue to be determined through this arbitration is the nature and extent of Claimant's damages arising from the aforementioned August 26, 2008 collision." Docket No. 98-1 at 2. The arbiter did not have the authority to resolve any disputes concerning coverage under the UIM policy. *Id.* at 3. Neither party discusses the scope of evidence presented at the arbitration hearing, but the Arbitration Award states, in relevant part, "The parties stipulated to liability, and agreed that the only issue the Arbiter was to determine was the value of the injuries, damages and losses caused by the August 26, 2008 automobile accident." Docket No. 86-5 at 1. The award's damages breakdown does not indicate that bad faith or statutory damages were contemplated by the arbiter. *Id.* Thus, the Court finds no basis upon which to conclude that plaintiff's bad faith and statutory claims against defendant were actually arbitrated.

The Court next turns to the issue of whether Mr. Toy could have brought his bad faith and statutory claims at the arbitration proceeding. *See MACTEC*, 427 F.3d at 831. Unlike federal and state courts, where a litigant with standing can unilaterally bring a claim, the scope of an arbitration proceeding is generally determined by the parties' arbitration clause and arbitration agreement. *Wolf v. Gruntal & Co., Inc.*, 45 F.3d 524, 528 (1st Cir. 1995). In instances where the arbitration clause mandates arbitration for

all claims, "*either* party may compel arbitration simply by submitting a *unilateral* 'demand for arbitration,'" whereupon the arbitration clause is "the sole *source* of arbitral authority." *Id.* (emphasis in original).  In this circumstance, a party may forfeit claims not brought in the original arbitration proceeding.  *See Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (applying transactional approach).  However, it is equally the case that if "the applicable procedural rules did not permit assertion of the claim in question in the first action . . . the claim is not barred in the second action." *Id.* (emphasis original).

Here, the UIM endorsement arbitration clause provided:

> If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured," then the matter may be arbitrated.  However, disputes concerning coverage under this endorsement may not be arbitrated.  Both parties must agree to arbitration.

Docket No. 109-1 at 4.  Where both parties must consent to arbitration, the arbitration clause does not provide for the mandatory arbitration of all claims.  Thus, a failure to raise additional claims is not automatically preclusive.  *See Pike*, 266 F.3d at 91.

The Court next turns to the issue of whether the arbitration clause permitted the parties to arbitrate bad faith and statutory claims.  Defendant argues that bad faith and statutory claims are "damages that are recoverable by that 'insured'" and, as such, are subject to arbitration.  Docket No. 124 at 3-4.  Mr. Toy argues that the clause does not provide for the arbitration of claims brought directly against defendant.  Docket No. 113 at 7.  The Court need not resolve this question of contract interpretation.  Even if the arbitration clause permitted Mr. Toy to arbitrate claims based upon defendant's conduct, the clause permitted arbitration only upon the consent of both parties.  As

17

discussed below, because the Arbitration Agreement did not contemplate Mr. Toy's bad faith and statutory claims, such claims are not precluded in this proceeding.

The Colorado Supreme Court and the Tenth Circuit have not expressly addressed a party's obligation to raise claims where, as here, an arbitration clause limits the claims subject to arbitration and requires the consent of both parties.  Where the arbitration clause provides for the arbitration of less than all claims or requires the consent of both parties, the parties may "agree in writing to arbitrate any or all such otherwise nonarbitrable claims" by entering into a separate arbitration agreement.  *Wolf*, 45 F.3d at 528.  In this instance, an arbiter could not exercise authority over claims that are not covered by an agreement between the parties; to do so would be to exceed the arbiter's authority.  *Id.*; *see also* 18B Charles Alan Wright et al., Federal Practice & Procedure Jurisdiction § 4475.1 (2d ed. 2013) ("If the arbiter lacked authority to entertain the matters advanced in the later litigation, claim preclusion does not apply.").  As such, "arbitration cannot be raised as a bar to claims falling outside the arbitration agreement."  *Williams v. E.F. Hutton & Co., Inc.*, 753 F.2d 117, 119 (D.C. Cir. 1985).  Even if it is possible to arbitrate a claim under the arbitration clause but the claim is "not actually raised in the arbitration proceeding[, t]here is no duty to arbitrate matters not subject to the arbitration agreement."  *Id.*  Thus, the analysis turns on whether, under the arbitration agreement, the plaintiff's bad faith and statutory claims should have been considered.  *Id.*; *see also Pike*, 266 F.3d at 91 ("the question is whether the claim was sufficiently related [such] that it *should have been* in that proceeding"); *cf. Autotrol Corp. v. J-F Equip. Co.*, 820 F. Supp. 293, 298 (N.D. Tex. 1993) (finding that, because

defendant willingly consented to have a contract interpreted by the arbiter, defendant was precluded from raising a counterclaim requiring the district court to re-interpret the agreement).

Defendant's argument that Mr. Toy made no attempt to request arbitration of his bad faith and statutory claims is unavailing where the UIM policy did not permit a unilateral demand for arbitration of claims. Defendant cites no authority requiring Mr. Toy to request to arbitrate claims or risk preclusion where the parties were governed by a non-mandatory arbitration clause. Moreover, defendant's argument is premised on the assumption that it would have agreed to arbitrate claims based on its own conduct. *See Wolf*, 45 F.3d at 529. Defendant also fails to show that Mr. Toy's bad faith and statutory claims should have been considered under the Arbitration Agreement. As noted above, the Arbitration Agreement states that "[t]he sole issue to be determined through this arbitration is the nature and extent of Claimant's damages arising from the aforementioned August 26, 2008 collision." Docket No. 98-1 at 2. Both of Mr. Toy's claims in the instant case are based on defendant's conduct, but defendant provides no indication that its conduct was ever at issue during the arbitration or even that a single piece of evidence was presented concerning its actions towards Mr. Toy. Because defendant fails to make a contrary showing, the Court finds that the Arbitration Agreement did not grant the arbiter the authority to decide defendant's liability for bad faith or statutory claims.[8]

---

[8]Requiring an insured to raise all potential claims related to the insurance contract prior to arbitration, or risk preclusion, could make insureds less willing to submit claims to arbitration and thereby frustrate the general federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23

The cases defendant cites are distinguishable.  In *MACTEC*, the Tenth Circuit found that the arbitration award necessarily would have required the arbiter to interpret the contract at issue, such that plaintiff's later claim for declaratory judgment was precluded since it involved interpretation of the same contract.  427 F.3d at 826-27.  *Salazar* is distinguishable for two reasons.  First, the plaintiff in *Salazar* brought both her initial breach of contract claim and subsequent suit for bad faith breach of contract in a state court of general jurisdiction and could have unilaterally asserted a bad faith claim in the initial proceeding.  148 P.3d at 279.  That is not the case here.  Second, the court relied, in part, on a finding that plaintiff's two complaints outlined the insurance company's refusal to pay.  *Id.* at 281.  Here, defendant provided no indication that its conduct was ever placed at issue during the arbitration.

For the above-stated reasons, the Court finds that defendant has failed to satisfy the identity of claims element.  Accordingly, the Court need not consider the remaining elements of claim preclusion.  Thus, the arbitration proceeding does not preclude Mr. Toy's bad faith and statutory claims in the instant case and the Court will deny defendant's motion for summary judgment on this issue.[9]

### B.  Workers' Compensation Offset

Defendant does not dispute that its initial settlement offer took into account additional compensation for lost wages paid by Mr. Toy's workers' compensation carrier

---

(1983) (noting policy favoring arbitration of claims).

[9]In resolving this issue, the Court did not find it necessary to consider the arguments advanced in Mr. Toy's surreply brief [Docket No. 125-1].  Thus, Plaintiff's Motion for Leave to File Surreply [Docket No. 125] is denied as moot.

and that its adjusters offset the amount of workers' compensation benefits received by

Mr. Toy pursuant to the UIM endorsement's exclusion language.  Docket No. 109-2 at

1-2; Docket No. 113-1 at 3-4, pp. 17:20-18:6 (Defendant's Rule 30(b)(6) Dep.).

However, defendant did not offset its actual payment of the policy limit by the amount of

workers' compensation benefits paid to Mr. Toy.  Docket No. 113-8 at 2; Docket No. 86

at 4, ¶ 12.  Defendant argues it did not act unreasonably by offsetting its settlement

offers by the amount of workers' compensation benefits Mr. Toy received.  Docket No.

109 at 10.  Plaintiff argues that offsetting settlement offers in that manner is evidence

defendant acted unreasonably.  *See* Docket No. 143 at 2-3; Docket No. 109-5 at 7.

Thus, in effect, defendant asks the Court to find that offsetting Mr. Toy's workers'

compensation benefits from Mr. Toy's UIM benefits in the course of making a

settlement offer was reasonable as a matter of law.

Colorado UIM coverage is governed by statute:

> [C]overage . . . shall be in addition to any legal liability coverage and shall cover the difference, if any between the amount of the limits of any legal liability coverage and the amount of the damages sustained . . . *The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.*

§ 10-4-609(1)(c) (emphasis added).  The language prohibiting a setoff from any other

coverage took effect on January 1, 2008.[10]  *See* S.B. 07-256, 66th Gen. Assemb., 1st

---

[10]Defendant does not argue that the relevant statutory language is inapplicable to the UIM endorsement.  S.B. 07-256 states: "This act shall take effect January 1, 2008, and shall apply to policies issued or renewed on or after the applicable effective date of this act."  *Id.*  Neither party has provided the complete insurance policy or otherwise indicated the date the policy was issued or renewed.  In the absence of any argument or evidence to the contrary, the Court will apply the relevant statutory language to the

Reg. Sess. (Colo. 2007).  The Colorado Supreme Court has not explicitly held that § 10-4-609(1)(c) prohibits a setoff from workers' compensation insurance.  However, defendant does not argue that the statute should be interpreted to permit a setoff from workers' compensation coverage.  Defendant instead argues that the Court should make a distinction between its offers to settle, which admittedly were reduced by the amount Mr. Toy received from his workers' compensation carrier, and its ultimate payment of the policy limit, which was not similarly reduced.  Docket No. 124 at 7.  The Court finds this argument unpersuasive given that an insurer's "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer." *Sanderson*, 251 P.3d at 1217.  Defendant's settlement offers are relevant to issues of bad faith and unreasonable delay or denial.

Defendant next argues the UIM endorsement's language permits it to offset its UIM coverage by the amount an insured receives from workers' compensation coverage.  Docket No. 109 at 11.  Under section C.2, the UIM endorsement provides: "This insurance does not apply to . . . [t]he direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law."  Docket No. 109-1 at 2.  To the extent the UIM endorsement can be interpreted as permitting defendant to offset UIM coverage by the amount Mr. Toy received from workers' compensation insurance, "[i]nsurance policy clauses that are contrary to a provision of a statute are void as against public policy."  *Aetna Cas. & Sur. Co. v. McMichael*, 906

---

UIM endorsement in this case.

22

P.2d 92, 100 (Colo. 1995). To the extent defendant relied on a policy provision that was contrary to § 10-4-609(1)(c), the Court cannot find defendant acted reasonably as a matter of law in incorporating offsets into its settlement offers.[11] Because the reasonableness of defendant's conduct is the only issue now before the Court, the Court finds defendant provides an insufficient basis under § 10-4-609(1)(c) upon which to conclude that defendant's conduct in offsetting its settlement offers by the amounts Mr. Toy received from workers' compensation insurance was reasonable as a matter of law.

In further arguing that its actions were reasonable, defendant asserts that the UIM provisions providing for the offset of workers' compensation payments are not void in violation of public policy. Docket No. 109 at 10-11. An insurance policy provision "is void and unenforceable if it violates public policy by attempting to 'dilute, condition, or limit statutorily mandated coverage.'" *McMichael*, 906 P.2d at 100 (quoting *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 589 (Colo. 1984)). An insurer is not entitled to "full indemnification of losses suffered by an UM/UIM insured under all circumstances." *Carlisle v. Farmers Ins. Exch.*, 946 P.2d 555, 557 (Colo. App. 1997). A UIM insurer is permitted "to aggregate all amounts received by the insured from *all*

---

[11]The parties disagree as to whether, in offsetting Mr. Toy's workers' compensation benefits, defendant's adjusters relied upon section C.2 or D.2 of the UIM endorsement. *Compare* Docket No. 109 at 3, ¶ 3, *with* Docket No. 113 at 2-3, ¶ 3. Defendant's Rule 30(b)(6) witness testified that section C.2 was "the provision" its adjusters relied upon. Docket No. 113-1 at 3-4, pp. 17:20-18:6. Defendant produces no evidence to contradict this testimony and no evidence indicating that its adjusters relied upon section D.2 in offsetting workers' compensation benefits. Thus, the Court finds no basis upon which to conclude that defendant relied upon section D.2 in calculating its settlement offers.

*parties liable for her injuries*," including amounts received from the tortfeasor's insurer. *Id.* However, UIM insurers are not entitled to offset coverage amounts an insured receives from "'separate and distinct' types of insurance coverages or agreements, such as Social Security disability insurance benefits, release-trust agreements, or personal injury protection benefits." *Id.* at 558; *accord Farmers Ins. Exch. v. Walther*, 902 P.2d 930, 935 (Colo. App. 1995). In *Nationwide Mut. Ins. Co. v. Hillyer*, 509 P.2d 810, 811 (Colo. App. 1973), the insured's policy included a provision providing that the insurer would reduce the amount payable under the policy by the value of any recovery under workmen's compensation law. The court held that an insurance carrier is prohibited from "reducing its liability to a victim of an uninsured motorist by the amount of any workmen's compensation award." *Id.* *Hillyer* has been interpreted as prohibiting an insurer from using a setoff to reduce benefits below the statutorily mandated minimum coverage. *See Continental Divide Ins. Co. v. Dickinson*, 179 P.3d 202, 206 (Colo. App. 2007).

In *Barnett v. Am. Fam. Mut. Ins. Co.*, 843 P.2d 1302, 1303 (Colo. 1993), the plaintiff's UIM policy contained a provision stating that amounts payable to the insured would be reduced by a "payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law." The plaintiff was awarded Social Security Disability Insurance benefits after she was injured in an automobile accident. *Id.* American Family argued that, pursuant to the policy, it was entitled to set off plaintiff's social security benefits from the UIM benefits. *Id.* at 1304. The Colorado Supreme Court held that the setoff clause in plaintiff's policy was

24

void in violation of public policy because "insurers may not absolve their liability under UM/UIM provisions by reducing the amount of UM/UIM coverage they contracted to provide by payments received for separate and distinct insurance benefits." *Id.* at 1307. American Family argued, as here, that an insured would then be permitted double recovery. *Id.* at 1308. Although social security benefits "overlap to some extent," the court held that social security benefits and UIM benefits were not duplicative because they compensated the insured for different losses. *Id.* at 1309.

Defendant relies on *Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40 (Colo. App. 2011), for its argument that the UIM exclusions prevent double recovery. Defendant is correct inasmuch as Colorado courts have upheld setoffs used to prevent double recovery. *Id.* at 48 (interpreting *Barnett*). However, in *Levy*, the insurer paid $18,838 for plaintiff's medical expenses and, in a subsequent arbitration proceeding, sought to reduce its UIM benefit by the $18,838 it had already paid for plaintiff's medical expenses. *Id.* at 43. Defendant here does not argue that it sought an offset for benefits it already paid and does not argue that workers' compensation benefits and UIM coverage were intended to compensate the insured for the same loss. *Cf. Barnett*, 843 P.2d at 1309 (determining that social security benefits are designed to compensate the insured for lost income whereas UIM benefits are intended to compensate the insured for any loss arising from death or bodily injury). As such, *Levy* is distinguishable. Even if the UIM endorsement's exclusions are interpreted as only prohibiting double recovery for the same benefit, defendant fails to meet its burden of showing that Mr. Toy's workers' compensation settlement was duplicative, rather than simply overlapping. *See*

*id.* Defendant cites the Workers' Compensation Claim(s) Settlement Agreement, which states that Mr. Toy settled all workers' compensation claims for $80,000, but makes no effort to indicate the specific duplicative effect of the settlement award.  *See* Docket No. 109 at 11.  Mr. Toy argues that, due to the statutory caps on workers' compensation awards, his UIM benefits would merely overlap in some instances.[12]  In light of the public policy articulated by Colorado courts and because defendant has failed to make a specific evidentiary showing that Mr. Toy stood to recover duplicative damages for the same injury, the Court cannot find that defendant's conduct during settlement negotiations to offset UIM benefits by the amount Mr. Toy received in workers' compensation benefits was reasonable as a matter of law.  The Court will deny defendant's motion for summary judgment on this issue.

### C.  Real Party in Interest

Defendant further argues that its conduct with respect to offsets during settlement negotiations was reasonable because Mr. Toy was not entitled to recover from defendant any amounts paid by his workers' compensation carrier.  Docket No. 109 at 13.  Specifically, defendant argues that "to the extent that Plaintiff was compensated for his accident-related economic damages by his workers' compensation carrier, the claim to recover those damages are 'owned' by the workers' compensation carrier" and, as such, Mr. Toy was not the real party in interest with respect to those

---

[12]Defendant's citation to Colorado trial court decisions from 2012 and 2013 is not relevant where the precise issue on summary judgment is the reasonableness of defendant's conduct in forming its settlement offers in 2011.  *See Gleason v. Farmers Ins. Exch.*, 2012 WL 2090719 (Denver Dist. Ct. Jan. 25, 2012); Docket No. 124-1 (*Plush v. Emp'rs Ins. Co. of Wausau*, Case No. 2012CV692 (Weld Cnty. Dist. Ct. June 18, 2013)).

amounts.  *Id.* at 17.  Colo. Rev. Stat. § 8-41-203(1)(b) provides that a workers'

compensation carrier is assigned a cause of action to recover from the liable party any

amounts paid to the injured party.  However, as noted above, defendant fails to explain

to what extent the workers' compensation settlement and UIM benefits compensated

Mr. Toy for the same damages, which is, by itself, a sufficient basis for the Court to

reject defendant's argument.  Defendant's argument also fails because, to any extent

Mr. Toy sought duplicative benefits, "[he] must reimburse the [workers' compensation]

insurer for any benefits paid."  *Tate v. Indus. Claim Appeals Office*, 815 P.2d 15, 17

(Colo. 1991).  Section 8-41-203 does not "create an outright assignment upon payment

of compensation benefits" because "such an assignment would leave the injured

employee with no rights remaining to which the insurer could become subrogated."

*Harms v. Williamson*, 956 P.2d 649, 651 (Colo. App. 1998).  Defendant's attempts to

distinguish *Harms* are unavailing.  Thus, the Court finds that defendant has provided no

basis, under § 8-41-203(1)(b), upon which to conclude that defendant's attempt to

offset its settlement offers by the amounts Mr. Toy received from workers'

compensation insurance was reasonable as a matter of law.  The Court will deny

defendant's motion for summary judgment on this issue.

### D.  Attorney Fees Under Colo. Rev. Stat. § 10-3-1116(1)

Defendant argues that, because Mr. Toy received payment of the policy limit

prior to filing this case, Colo. Rev. Stat. § 10-3-1116(1) does not permit him to recover

attorney fees from the prosecution of this action.  Docket No. 109 at 18.  Defendant

claims that Mr. Toy's attorney fees in this matter are unrelated to any attempt to recover

an unreasonably delayed or denied benefit and as such cannot be awarded under § 10-3-1116(1). *Id.* at 19. Defendant's argument is devoid of support.

As noted above, the Court construes the language of Colorado statutes to give effect to the intent of the General Assembly. *See Dubois*, 211 P.3d at 43. Section 10-3-1116(1) allows for a claimant whose insurance payment was unreasonably delayed or denied to recover "reasonable attorney fees and court costs and two times the covered benefit." "Damages awarded pursuant to this section shall not be recoverable in any other action or claim." § 10-3-1116(4). The statute contains no language limiting a claimant's ability to recover attorney fees and the statute does not differentiate the attorney fees, court costs, and covered benefit penalties available to a claimant. Thus, the plain language of the statute does not suggest that the award of attorney fees under the statute is dependant upon attorney fees accrued during the process of recovering the original covered benefit due the insured. Defendant's interpretation would require that the Court interpret the statute to permit recovery of attorney fees only if the insurer had not paid the covered benefit as of the commencement of litigation. Defendant's observation that statutory claims are often brought in conjunction with breach of contract claims does not suggest an alternative interpretation. *See* Docket No. 109 at 19. Moreover, defendant's interpretation is inconsistent with the purpose of § 10-3-1115 and § 10-3-1116 as penalty statutes. *See Kisselman*, 292 P.3d at 972. The Court will deny defendant's motion for summary judgment on this issue.

## V. CONCLUSION

For the foregoing reasons, it is

28

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No. 86] is **GRANTED** in part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 109] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Leave to File Surreply [Docket No. 125] is **DENIED** as moot.

DATED January 29, 2014.

BY THE COURT:


 s/Philip A. Brimmer

PHILIP A. BRIMMER
United States District Judge