IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01683-PAB-MJW

GREGORY TOY,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

     Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff's Motion *in Limine* to Allow Evidence and Argument Related to Defendant's Arbitration Conduct (Motion *in Limine* No. 5) [Docket No. 176] filed by plaintiff Gregory Toy and the Motion in Limine Re: Events Occurring After July 1, 2011 [Docket No. 188] filed by defendant American Family Mutual Insurance Company.  Both motions are opposed.

## I. BACKGROUND

### A.  Arbitration Demand

On July 1, 2011, plaintiff's counsel sent defendant's counsel a letter asking if defendant would "agree to arbitrate the value of Mr. Toy's underlying underinsured motorist claim?"  Docket No. 101-1.  On August 4, 2011, Mr. Toy filed an action against defendant in the District Court for the City and County of Denver, Colorado bringing claims for breach of contract, bad faith breach of contract, and a statutory claim under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Docket No. 113-5 at 3-5.  On August 10,

2011, defendant advised Mr. Toy that it would not formally respond to a request for arbitration until such time as Mr. Toy provided a formal demand for arbitration.  Docket No. 86-4 at 1.  On August 15, 2011, Mr. Toy served a Demand for Arbitration on defendant.  Docket No. 86-3.  Mr. Toy then dismissed his state court action against defendant without prejudice.  Docket No. 113 at 5, ¶ 1.  On August 29, 2011, the parties entered into an Arbitration Agreement.  Docket No. 98-1 at 2.

On April 12, 2012, the arbiter determined the damages to be $2,067,005.30, which consisted of $275,000 in noneconomic damages, $964,557 in economic damages, and $300,000 in physical impairment damages, plus interest and costs. Docket No. 86 at 4, ¶ 10; Docket No. 86-5.  The parties agreed to reduce the award to $1,000,000, the UIM policy limit, and, on April 19, 2012, defendant paid plaintiff $1,000,000 plus costs and interest.  Docket No. 113-8 at 2.

### B.  Procedural History

After commencing litigation in the present case, plaintiff filed a motion to compel seeking the production of documents in the possession of defendant American Family Mutual Insurance Company ("American Family") generated after July 1, 2011, the date on which plaintiff requested arbitration to settle the parties' valuation dispute.  Docket No. 17 at 3-5.  On October 26, 2012, the magistrate judge denied plaintiff's motion, finding that the documents requested were irrelevant because American Family's duty to negotiate in good faith was suspended once plaintiff made his arbitration demand. Docket No. 32 at 4.  Specifically, the magistrate judge found that so long as "there was a genuine dispute at the *time plaintiff made his arbitration demand*" records generated by American Family after plaintiff's arbitration demand are irrelevant.  *Id*. at 4 (emphasis

2

in original).

Plaintiff filed a motion for reconsideration [Docket No. 36], which the magistrate judge denied [Docket No. 47].  Plaintiff then filed an objection requesting that the Court reverse the magistrate judge's order and compel American Family to produce its post-arbitration demand documents.  Docket No. 48 at 10.  In an August 1, 2013 order (the "Order"), the Court denied plaintiff's appeal on multiple grounds.  Docket No. 137.  First, the Court agreed with the magistrate judge that, "so long as there is a genuine disagreement between the parties at the time an insured makes a request for arbitration, the insurer's duty to negotiate is suspended until the arbitration fulfills its purpose of determining the value" of an insurance claim.  *Id.* at 4.  Second, the Court found that, although the magistrate judge concluded that defendant's duty to negotiate was suspended by plaintiff's request for arbitration, such a conclusion was limited to the issues raised in plaintiff's motion to compel such that "plaintiff still has the right to prove that there was no genuine disagreement between the parties about the value of his claim at the time he made an arbitration request."  *Id.* at 9.  Third, although the Court found no clear error in the magistrate judge's conclusion that defendant's post-arbitration demand *knowledge* was not relevant for purposes of discovery, the Court specifically noted that "evidence of American Family's post-arbitration demand *conduct* could be relevant and discoverable (e.g., unreasonably delaying the date of the arbitration proceeding or unreasonably refusing to agree to a particular arbitrator)."  *Id.* at 7-8 (emphasis added).

Plaintiff's motion in limine asks the Court to allow him to present evidence of defendant's conduct during arbitration.  Docket No. 176.  Plaintiff apparently intends to

introduce evidence that defendant chose not to present evidence during the arbitration proceeding, but plaintiff's motion is otherwise silent as to what specific evidence he seeks to introduce.  *Id.* at 4.  Defendant's motion in limine asks the Court to exclude evidence or argument regarding its conduct after July 1, 2011.  Docket No. 188 at 5. Defendant interprets the Court's Order resolving plaintiff's discovery objections as a ruling that defendant's post-arbitration demand conduct is not relevant.  *Id.* at 1.

## II.  APPLICABLE LAW

An insurer's "duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, including through a lawsuit or arbitration between an insured and the insurer."  *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).  However, the duty to negotiate may be suspended when two conditions are met: (1) a genuine disagreement as to the value of an insured's claim; and (2) the initiation of adversarial proceedings, such as arbitration.  *Id.*; *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 592-93 (Colo. App. 1988) (holding that insurer's duty to continue to negotiate settlement ceased upon insured's demand for arbitration).

An insurer's conduct after the commencement of adversarial proceedings can be admissible and relevant to an insurer's duty of good faith, provided the proponent of such evidence makes a sufficient showing of relevance.  *Rabin v. Fidelity Nat'l Property & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1116 (D. Colo. 2012).  Conduct after the filing of a complaint can be admissible if it is "'a continuation of the same difficulties that preceded the filing of the complaint' and [is] relevant as evidence of a pattern of defendant's bad faith dealings with the plaintiff."  *Dale v. Guaranty Nat'l Ins. Co.*, 948

P.2d 545, 552 (Colo. 1997) (quoting *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1106 (Colo. App. 1990)).  For example, evidence that an insurer failed to pay the entire arbitration award may be relevant because such conduct was demonstrative of "a pattern or course of conduct." *Rabin*, 863 F. Supp. 2d at 1116; *see also Southerland*, 794 P.2d at 1106 ("continued late payments and ongoing difficulties . . . were merely a continuation of the same difficulties that preceded the filing of the complaint and were relevant as evidence of defendant's habitual pattern in dealing with plaintiff").

However, where a plaintiff seeks to introduce evidence of specific conduct that is related to and occurred during litigation, plaintiff must make a specific showing of "extraordinary facts." *Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 819 (Colo. App. 2006); *see, e.g.*, *Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337, 343 (Colo App. 2001) (holding that trial court properly considered defendant's litigation tactics when calculating exemplary damages).  In order to be admissible, evidence of litigation conduct must pass a Fed. R. Evid. 403 balancing test, with particular scrutiny placed on the proponent's showing of probative value.  *See Parsons*, 165 P.3d at 819.  In the context of bad faith claims, where the focus is "the insurer's knowledge and belief during the time the claim is being reviewed[,] the relevance of litigation conduct is severely diminished." *Timberlake Constr. Co v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995) (internal quotation marks omitted) (applying Oklahoma law and holding that trial court erred in admitting evidence of a post-litigation letter from insurer's counsel to insurer's adjuster, evidence that insurer filed a counterclaim, and evidence that insurer moved to join necessary party).  As such, although an insurer's

litigation conduct may be admissible in rare instances, "such evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice." *Id.* at 341; *see, e.g.*, *Rabin*, 863 F. Supp. 2d at 1117-1118 (excluding evidence of an insurer's attempt to assert counterclaims upon a finding that such evidence was "more benign and less probative of bad faith and a section 1116 violation").

## III.  ANALYSIS

### A.  Defendant's Motion to Exclude Events Occurring After July 1, 2011

Defendant argues that the Court has repeatedly issued orders finding that evidence of events occurring after July 1, 2011 is irrelevant.  Docket No. 188 at 1 (citing Docket Nos. 32, 36, 47, 71, 137).  Defendant claims that plaintiff made his arbitration demand on July 1, 2011 and, as such, that evidence of defendant's conduct after that date should not be admissible.  Docket No. 188 at 1-2.

Defendant's interpretation of the Court's discovery orders is incorrect.  As noted above, the Court explicitly distinguished the relevance of defendant's knowledge before plaintiff's arbitration demand and defendant's conduct after arbitration and found that the latter could be relevant and discoverable.  Docket No. 137 at 7.  Moreover, the Court was careful to limit the scope of its ruling to the issues raised in plaintiff's motion to compel.  *Id.* at 9.  The Court explicitly stated that both parties would have the opportunity, on a motion for summary judgment or at trial, to present evidence concerning the existence of a genuine disagreement.  *Id.* at 7, 9.  Thus, the Court's discovery orders themselves do not foreclose either side from presenting evidence of conduct occurring after plaintiff's request for arbitration.

6

To the extent defendant argues that plaintiff's July 1, 2011 letter was sufficient to constitute the commencement of an adversarial proceeding for purposes of suspending its duty to negotiate in good faith, the Court disagrees.  In *Bucholtz*, the insurance policy's terms mandated arbitration such that "both parties had a right, as well as an obligation, to submit this dispute to arbitration."  *Bucholtz*, 773 P.2d at 592-593.  Thus, where a genuine disagreement existed, the insured's unilateral demand for arbitration was sufficient to suspend the insurer's duty to negotiate in good faith. *Id.*   Here, however, the UIM endorsement's arbitration clause required both parties to agree to arbitration. *See* Docket No. 109-1 at 4.  Therefore, it would be improper for the Court to find, as a matter of law, that Mr. Toy's July 1, 2011 letter mentioning the possibility of arbitration constituted the commencement of an adversarial proceeding – especially where the record suggests that defendant did not respond to plaintiff's inquiry until August 10, 2011. *See* Docket No. 86-4 at 1.  As plaintiff points out, defendant required him to make a formal demand for arbitration, which he did on August 15, 2011.  Docket No. 202 at 2.  Thus, the Court finds no basis upon which to grant defendant's broad request to exclude evidence of conduct occurring between July 1, 2011 and August 15, 2011.

### B.  Plaintiff's Motion to Allow Evidence of Defendant's Arbitration Conduct

Plaintiff argues that it should be permitted to present evidence of defendant's arbitration conduct.  Docket No. 176 at 1.  However, plaintiff's motion is vague as to what arbitration conduct of defendant he seeks to introduce.  Based upon plaintiff's assertions that defendant, in preparation for or during the arbitration, failed to designate

exhibits or witnesses, failed to depose plaintiff's treating physicians, and failed to submit a Summary of the Case, plaintiff apparently seeks to argue that defendant did not mount a meaningful defense during arbitration, *Id.* at 4.  Plaintiff argues that this conduct shows the lack of a "genuine disagreement" as to the value of his UIM claim and is probative on the issue of whether defendant had a reasonable basis for delaying payment of his UIM claim.  *Id.* at 4-5.

Plaintiff's motion implicates evidence of defendant's conduct occurring during three time periods.  First, defendant's conduct up to and including the point at which plaintiff demanded arbitration on August 15, 2011.  Second, defendant's conduct after plaintiff's formal demand for arbitration and during the arbitration proceeding.  Third, defendant's conduct after the arbitration award was issued.

The Court first turns to the admissibility of defendant's conduct during the period up to and including plaintiff's demand for arbitration.  As noted above, because defendant was free to refuse to arbitrate and did not immediately respond to plaintiff's request to arbitrate, defendant's conduct prior to plaintiff's formal demand for arbitration did not occur during the pendency of arbitration.  *Cf. Southerland*, 794 P.2d at 1106. The Court finds that defendant's conduct between plaintiff's July 1, 2011 request to arbitrate and August 15, 2011 may be relevant to plaintiff's statutory and bad faith claims.  *See* Colo. Rev. Stat. § 10-3-1115(1)(a) (an insurer "shall not unreasonably delay or deny payment of a claim for benefits); *Parsons*, 165 P.3d at 815 ("the question [in resolving a bad faith claim] is whether a reasonable insurer . . . would have denied or delayed payment of the claim").  As such, the Court will grant plaintiff's motion to the extent he seeks to introduce evidence of defendant's conduct that occurred at any point

8

up to and including plaintiff's formal demand for arbitration.

The Court next turns to the admissibility of defendant's conduct regarding arbitration between August 15, 2011 and April 12, 2012, when the arbiter issued his award.  The Court finds that such conduct occurred during the pendency of litigation and as such requires a specific showing of relevance.  *See Dale*, 948 P.2d at 552; *Timberlake Construction.*, 71 F.3d at 341.  The Court has already ruled that the arbiter's calculation of actual damages is inadmissible, stating, "an arbiter's calculation of damages, based on facts available in April 2012, does not necessarily reflect the unreasonableness of defendant's conduct, based on the facts available to defendant in May and June 2011."  Docket No. 217 at 9.  The same reasoning applies to the admissibility of defendant's conduct during the arbitration proceeding.  Plaintiff makes no showing as to how the defendant's conduct during the pendency of arbitration is relevant to explaining defendant's claims handling decisions made prior to plaintiff's formal arbitration demand.  Moreover, allowing evidence of arbitration conduct in bad faith litigation may adversely affect the efficiency of arbitrations by interjecting motives extraneous to the issues that the arbitrations are intended to resolve.  *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983) (noting policy favoring arbitration of claims).

Evidence of defendant's arbitration conduct carries a substantial danger of unfair prejudice and jury confusion.  *See* Fed. R. Evid. 403.  Determining whether defendant's arbitration conduct was evidence of bad faith would require the parties to explain to the jury the procedural aspects and merits of the arbitration proceeding.  *See Rabin*, 863 F.

9

Supp. 2d at 1118.  Counsel on both sides may also be called to testify.  This would only serve to create confusion and unnecessarily lengthen the trial, especially where plaintiff's actual damages are not at issue.  Moreover, defendant would suffer unfair prejudice by being forced to chose between revealing information protected by attorney-client privilege in order to justify its arbitration strategy or allowing plaintiff's evidence to go uncontested.  *See Parsons*, 165 P.3d at 817 (noting conflict between attorney-client privilege and the use of litigation conduct to show bad faith).

Plaintiff argues that defendant's arbitration conduct is relevant to two provisions of the Unfair Claim Settlement Practices Act ("UCSPA"), Colo. Rev. Stat. § 10-3-1104(1)(h).  Section (VI) and section (VII) provide that an insured can violate the UCSPA by:

> (VI) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; or
>
> (VII) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

§ 10-3-1104(1)(h).  Plaintiff, however, fails to indicate how defendant's arbitration conduct is related to a failure to achieve settlement.  Rather, both parties agreed to proceed to arbitration in August 2011.  With respect to the issue of plaintiff's ultimate recovery, plaintiff did not recover the full arbitration award.  The parties agreed to reduce the award to the policy limit of $1,000,000.  The Court has already ruled that the amount plaintiff ultimately recovered, $1,000,000, is admissible.

In light of the danger of jury confusion and unfair prejudice, the Court finds that plaintiff has failed to satisfy his burden of showing that defendant's conduct during the

10

pendency of arbitration is relevant and admissible. Thus, the Court will deny plaintiff's

motion to the extent he seeks to introduce evidence of defendant's conduct during the

pendency of arbitration, namely, evidence of defendant's conduct occurring after

plaintiff's formal demand for arbitration on August 15, 2011 and up until the arbitration

proceeding concluded on April 12, 2012.[1]

Finally, the Court turns to evidence of defendant's conduct after the arbitration

award was issued. During a February 3, 2014 hearing before the Court, plaintiff's

counsel stated that plaintiff does not claim any unreasonable delay from the time the

award was issued to defendant's payment of the policy limit. Docket No. 225 at 35:7-

13. Plaintiff's counsel also stated that defendant's conduct after the payment of the

policy limit is not at issue. *Id.* at 35:17-20. As such, issues regarding this time period

are moot.

## IV. CONCLUSION

For the forgoing reasons, it is

**ORDERED** that Plaintiff's Motion *in Limine* to Allow Evidence and Argument

Related to Defendant's Arbitration Conduct (Motion *in Limine* No. 5) [Docket No. 176] is

**GRANTED** in part and **DENIED** in part as indicated in this order. It is further

**ORDERED** that defendant's Motion in Limine Re: Events Occurring After July 1,

2011 [Docket No. 188] is **DENIED**.

---

[1]Plaintiff fails to identify what, if any, additional evidence of defendant's arbitration conduct he seeks to present. Because the admissibility of an insurer's litigation conduct hinges on a strong showing of relevance, the Court finds no basis upon which to grant plaintiff's broad request to present unlimited evidence of defendant's arbitration conduct.

DATED February 6, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge